IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORTHOPHOENIX, LLC,<br><br>        Plaintif<br><br>    v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC.; JOHN AND/OR JANE DOES 1-100,<br><br>        Defendant. | C.A. No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Orthophoenix, LLC ("Orthophoenix") alleges as follows:

**PARTIES**

1. Orthophoenix is a Delaware limited liability company with a principal place of business located at 2515 McKinney Avenue, Suite 1000-B, Dallas, Texas 75201.

2. Defendant Wright Medical Technology, Inc. ("Wright Medical") is a Delaware corporation with a principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. Wright Medical has appointed Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, as its agent for service of process.

3. Defendants John and/or Jane Does 1-100 ("Does") are orthopedic surgeons using the infringing products manufactured by Defendant Wright Medical. Does' identities are not presently known to Orthophoenix; however, on information and belief, Defendant Wright Medical is in possession of documents and information from which Does' identities can be readily ascertained.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant Wright Medical because, among other reasons, Defendant Wright Medical is a corporation organized and existing under the laws of the State of Delaware. Thus, Defendant Wright Medical has purposefully availed itself of the benefits of the State of Delaware and the exercise of jurisdiction over Wright Medical would not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this District under 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND

7. In 1994 Dr. Mark Reiley, an orthopedic surgeon from Berkeley, California, Mr. Arie Scholten, an engineer and inventor of surgical products, and Dr. Karen Talmadge, a Harvard University biochemist, founded Kyphon Inc. ("Kyphon"). Kyphon quickly came to be recognized as the global leader in restoring spinal function through minimally invasive therapies via its innovative, and then disruptive, technology. Kyphon relentlessly pursued novel solutions and their translation into practice. Dr. Reiley performed the first balloon kyphoplasty in 1998; today, over 11,000 physicians throughout the world have been trained to perform balloon kyphoplasty.

8. Due to Kyphon's dedication to developing pioneering medical technologies, it was awarded over 500 U.S. Patents and Applications.

9. Kyphon became the industry leader and Dr. Karen Talmadge, then Executive Vice President, Co-Founder, and Chief Science Officer was given the Patient Quality of Life Award in November 2004 by the International Myeloma Foundation. This award recognized the impact of balloon kyphoplasty in helping myeloma patients with spinal fractures return to their daily lives. In the same year, Kyphon was named the top emerging medical device company in the industry by a group of 150 medical device CEOs.

10. The significant value of Kyphon and its patents is reflected in the $4.2 billion purchase price Medtronic, Inc. ("Medtronic") paid for Kyphon in 2007.

11. Medtronic is a world leader in medical device technologies and therapies. Medtronic specializes in developing and manufacturing medical device technologies and therapies to treat chronic disease worldwide. On April 26, 2013, Orthophoenix completed a transaction to acquire the Kyphon technology, which includes approximately 500 patents and applications.

12. On May 13, 2013, Orthophoenix, through its licensing agent, provided a letter via overnight delivery service to Wright Medical requesting that Wright Medical enter into discussions regarding the technology at issue in this case. Wright Medical never responded.

**ASSERTED PATENTS**

13. Orthophoenix is the owner by assignment of U.S. Patent No. 6,440,138 (the "'138 patent"). The '138 patent is entitled "Structures and Methods For Creating Cavities In Interior Body Regions." The '138 patent issued on August 27, 2002. A true and correct copy of the '138 patent is attached hereto as Exhibit A.

14.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,863,672 (the "'672 patent"). The '672 patent is entitled "Structures And Methods For Creating Cavities In Interior Body Regions." The '672 patent issued on March 8, 2005. A true and correct copy of the '672 patent is attached hereto as Exhibit B.

**COUNT I**
**(Infringement of U.S. Patent No. 6,440,138)**

15.     Orthophoenix references and incorporates by reference paragraphs 1 through 14 of this Complaint.

16.     Wright Medical has been and still is infringing at least claim 1 of the '138 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments used to create cavities within cancellous bone including, but not limited to, the X-Ream Percutaneous Expandable Reamer.

17.     By way of example only, with reference to Claim 1 of the '138 patent, the X-Ream Percutaneous Expandable Reamer manufactured, sold, offered for sale, or imported by Wright Medical includes a cannula having an axis establishing a percutaneous path leading to inside a bone. The X-Ream Percutaneous Expandable Reamer includes a shaft that carries a cavity-forming structure adapted to be deployed inside bone by movement within and along the axis of the cannula. The cavity-forming structure comprises a surface which directly contacts and shears cancellous bone in response to rotating the shaft within and about the axis of the cannula.

18.     Defendant Does have been and still are infringing at least Claim 1 of the '138 patent, literally and under the doctrine of equivalents, by using, without license or

authority, surgical instruments including, but not limited to, the X-Ream Percutaneous Expandable Reamer Does purchased from Wright Medical.

19.    Wright Medical has also infringed indirectly and continues to infringe indirectly the '138 patent by active inducement under 35 U.S.C. § 271(b).

20.    At least after being served with the Complaint in this action, Wright Medical has had knowledge of the '138 patent.

21.    On information and belief, Wright Medical has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Wright Medical provides training and instruction materials to physicians on how to use its surgical instruments used to create cavities within cancellous bone, including but not limited to, the infringing X-Ream Percutaneous Expandable Reamer during the performance of surgical procedures during which physicians use the instruments to create cavities within cancellous bone.  By using Wright Medical's medical instrument products, including the X-Ream Percutaneous Expandable Reamer, to create cavities within cancellous bone, physicians are directly infringing at least Claim 1 of the '138 patent.  By continuing to provide instruction and training on the use of at least the X-Ream Percutaneous Expandable Reamer to physicians despite its knowledge that the instruments infringe the '138 patent, Wright Medical has and continues to specifically intend to induce infringement of the '138 patent.

22.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '138 patent.

23.     As a result of Defendants' infringement of the '138 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

24.     Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '138 patent, Orthophoenix will be greatly and irreparably harmed.

## COUNT II
### (Infringement of U.S. Patent No. 6,863,672)

25.     Orthophoenix references and incorporates by reference paragraphs 1 through 24 of this Complaint.

26.     Defendants Does have been and still are infringing at least Claim 19 of the '672 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the X-Ream Percutaneous Expandable Reamer Does purchased from Wright Medical, in the manner instructed and taught by Wright Medical, and in the manner for which the X-Ream Percutaneous Expandable Reamer is approved for use by the FDA.

27.     Wright Medical has been and still is infringing at least Claim 19 of the '672 patent, literally and under the doctrine of equivalents, by using its surgical instruments, including but not limited to, the X-Ream Percutaneous Expandable Reamer,

to perform the method of treating a vertebral body described in Claim 19 of the '672 patent.

28.   Wright Medical has also infringed indirectly and continues to infringe indirectly the '672 patent by active inducement under 35 U.S.C. § 271(b).

29.   At least after being served with the Complaint in this action, Wright Medical has had knowledge of the '672 patent.

30.   On information and belief, Wright Medical has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Wright Medical provides training and instruction materials to physicians on how to use its surgical instruments, including the X-Ream Percutaneous Expandable Reamer, during the performance of surgical procedures during which physicians use the surgical instruments to create cavities in the cancellous bone of a vertebral body.  By using the surgical instruments, including the X-Ream Percutaneous Expandable Reamer, to create cavities in cancellous bone as instructed and trained by Wright Medical, physicians directly infringe at least Claim 19 of the '672 patent.  By continuing to provide instruction and training to physicians on how to use its surgical instruments to perform procedures during which physicians create cavities in cancellous bone in the manner described in Claim 19 of the '672 patent, Wright Medical has and continues to specifically intend to induce infringement of the '672 patent.

31.   Wright Medical has also infringed indirectly and continues to infringe indirectly the '672 patent by contributory infringement under 35 U.S.C. § 271(c).

32.     Wright Medical has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing surgical instruments, including but not limited to, the X-Ream Percutaneous Expandable Reamer, with the knowledge that the they will be used by physicians to directly infringe at least Claim 19 of the '672 patent.

33.     Wright Medical has had knowledge of the '672 patent since at least after being served with the Complaint in this action.  Since that time, Wright Medical has had knowledge that the surgical instruments, including the X-Ream Percutaneous Expandable Reamer, are material components to practicing the surgical procedures claimed in the '672 patent, that the surgical instruments not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the infringing surgical instruments, including the X-Ream Percutaneous Expandable Reamer, are especially made and/or adapted for use in infringing the '672 patent.  For example, despite having knowledge that the X-Ream Percutaneous Expandable Reamer is used by physicians to perform surgical procedures infringing the '672 patent, Wright Medical continues to provide instruction and training to physicians on how to use the X-Ream Percutaneous Expandable Reamer in a manner that directly infringes at least Claim 19 of the '672 patent.  Wright Medical does not provide instructions or training on the use of the X-Ream Percutaneous Expandable Reamer in a manner that does not infringe the '672 patent.  Furthermore, upon information and belief, the FDA has only approved the X-Ream Percutaneous Expandable Reamer for use in surgical procedures that infringe the '672 patent.

34. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '672 patent.

35. As a result of Defendants' infringement of the '672 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

36. Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '672 patent, Orthophoenix will be greatly and irreparably harmed.

## PRAYER FOR RELIEF

Orthophoenix prays for the following relief:

1. A judgment that Defendants have infringed one or more claims of the '138 and/or '672 patents;

2. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with Defendants, from infringing the '138 and/or patents;

3. An award of damages resulting from Defendant's acts of infringement in accordance with 35 U.S.C. § 284;

4.  A judgment and order requiring Defendants to provide accountings and to pay supplemental damages to Orthophoenix, including, without limitation, prejudgment and post-judgment interest; and

5.  Any and all other relief to which Orthophoenix may show itself to be entitled.

## JURY TRIAL DEMANDED

Orthophoenix hereby demands a trial by jury of all issues so triable.

June 4, 2013

OF COUNSEL:

Marc A. Fenster
Daniel P. Hipskind
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
mfenster@raklaw.com
dhipskind@raklaw.com
(310) 826-7474

BAYARD, P.A.

/s/ Richard D. Kirk
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*Attorneys for Plaintiff,
Orthophoenix, LLC*